**PAULO ALOFIPO, Plaintiff**

**v.**

**MOANANU VA, Defendant**

High Court of American Samoa
Trial Division

CA No. 32-91

March 25, 1992

Before RICHMOND, Associate Justice, MATA'UTIA, Associate Judge, and MAILO, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
 For Defendant, Gata E. Gurr

This is an action for damages for personal injuries. The

119

action was brought against both the American Samoa Government and Moananu Va. Defendant American Samoa Government's motion to dismiss for failure to state a claim was granted and trial proceeded against defendant Moananu Va only.

## FINDINGS

The accident at issue in this action occurred on May 2, 1989, between 5:45 and 6:00 a.m., on the main public road immediately adjacent to the driveway into the old A & A Pizza restaurant in Malaeimi, American Samoa. The weather was clear and dry. It was after daybreak but it was not yet full daylight.

Plaintiff Paulo Alofipo, age 31, and his brother Kenny Alofipo, age 22, were jogging along the roadway at a moderately fast pace. Plaintiff was on the pavement at the right of the road. His brother was on the pavement at the left edge of the road, approximately 20 feet ahead of plaintiff.

They began jogging from the gymnasium at the Mormon Church to the west of the accident scene and were headed in an easterly direction. They jogged together regularly, starting at this point, turning southerly onto the unpaved road into Ottoville east of the accident location, and through Ottoville to the plaintiff's home--at the time behind Christina's nightclub near the airport runway.

Defendant Moananu Va, age 56, was driving an Isuzu Trooper, legislature vehicle No. 6, in an easterly direction. He testified that he first saw plaintiff about 30 feet in front of his vehicle jogging on the right side of the pavement and plaintiff's brother jogging a few feet further ahead on the left side of the pavement. His headlights were not turned on. His speed was 15 to 20 miles per hour, and he did not slow down after observing plaintiff and his brother. He did not sound his horn.

Defendant testified that he moved his vehicle left towards the center of the road, there being no oncoming traffic, to avoid plaintiff and his brother. He further testified that when he was four or five feet from plaintiff, plaintiff suddenly started to cross the road in front of his vehicle. Plaintiff denies making any movement to his left at this point in the events.

Defendant's vehicle, at 15 to 20 miles per hour, was moving 22 to 29.33 feet per second. Given this speed it is improbable that plaintiff

120

moved in front of the vehicle when he was only four to five feet ahead. Whether or not defendant moved his vehicle towards the center of the road upon first seeing plaintiff, his vehicle remained close to the right edge of the pavement and the right front headlight area struck plaintiff's left backside.

The blow uplifted plaintiff onto the hood of defendant's vehicle. He then collided with the vehicle's windshield and fell to the road. He was carried forward to the vicinity of plaintiff's brother, who had stopped when he became aware of his brother's predicament.

There is conflicting evidence on plaintiff's final exact location on the road and the relationship of this location to plaintiff's brother and defendant's vehicle. This spot, however, has minimal probative value. It may have resulted from numerous factors, unrelated and speculative to the relative locations between plaintiff and defendant's vehicle at the moment of impact. Witness credibility is not resolved on this basis.

The impacts rendered plaintiff unconscious. He was taken to the Government medical center at Fagaalu several miles away by defendant. While in defendant's vehicle, plaintiff said "Thank God I'm still alive" perhaps twice, and once apologized for not looking behind. However, he was dazed and in pain, and does not recall making these statements.

He next recalled being at the medical center at Fagaalu, feeling pain in right portions of his head, eye, brow and upper cheek, both knees, right rib and shoulder areas, and left thigh and left side of his back.

Plaintiff's scratches and bruises healed in about one month. He has permanent upper body scars. Muscle aches lasted, with therapy at the medical center once a week, until September 1989, when he was able to jog normally again. Inner right eye trauma took longer to heal and at times he still experiences blurred and double vision in this eye. His eyesight was normal before the accident.

A medical eye examination 45 days after the accident revealed a right eye cataract which may have resulted from the accident injuries. However, this consequence after 45 days is inconclusive. The examination did reveal vision impairment in both eyes.

Plaintiff's medical expenses under the territorial health care program were $24.

121

## CONCLUSIONS

Several statutory standards of due care are applicable to the facts of this case. Driving a motor vehicle upon a public road in a "careless and imprudent manner without due regard for the width, grade, curves, corners, traffic, or other attending circumstances" is prohibited by A.S.C.A. § 22.0701. "Every driver of a motor vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway," and "shall give warning by sounding the horn when necessary." A.S.C.A. § 22.0406.

Pedestrians, on the other hand, are admonished, where there are no sidewalks, and when practicable, to "walk only on the left side of the roadway or its shoulder, facing traffic which may approach from the opposite direction." A.S.C.A. § 22.0403.

Defendant has breached the standard of due care stated in the first two of these statutes. Viewed as a whole, the preponderance of the evidence establishes that defendant was inattentive to plaintiff's presence on the road until it was too late to take effective evasive action. It was light but not full daylight. His headlights were off. He failed to sound his horn. The affirmative evidence on the speed of his vehicle indicates he had less than one second to react after noticing plaintiff. Movement of his vehicle to the left may have been instinctive, but it was too little and too late. Defendant was negligent in operating his vehicle at the time and place of the accident.

Plaintiff was also negligent when he breached the third statutory standard of due care as he jogged on the right side of the road with his back turned to oncoming traffic.

But for the negligence of both parties, plaintiff's injuries would not have occurred. Thus, the negligence of both parties proximately caused plaintiff's injuries. Under A.S.C.A. § 43.5101, contributory negligence does not bar recovery, but damages are reduced in proportion to the extent of negligence attributable to the injured person. Applying the doctrine of comparative negligence in this case, the assessment of responsibility is placed on defendant at 75 percent and on plaintiff at 25 percent.

Special damages for medical expenses are $24. General damages, including pain and suffering and disfigurement, are $16,000. Apportioning the parties' respective responsibility, plaintiff is awarded

judgment against defendant for damages in the amount of $12,018.

It is so ordered.